Roy HATHCOCK, Plaintiff-Appellee,

v.

G & M BUILDERS, INC., et al., Defendants-Appellees, Cross-Appellants,

v.

DAN McKINNEY BRITISH MOTORS, INC., Defendant-Appellant, Cross-Appellee.

No. 77–1623.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1979.

E. Stephen Williams, Pat H. Scanlon, Jackson, Miss., for Dan McKinney British Motors, Inc.

William M. Bost, Jr., Vicksburg, Miss., for G & M Builders, Inc.

Marshall E. Hanbury, Stephen Beach, III, Stephen L. Beach, Jackson, Miss., for Roy Hathcock.

Before THORNBERRY, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

On December 12, 1975, Roy Hathcock purchased a 1972 Mercedes-Benz from Dan McKinney British Motors, Inc., which in turn had purchased the automobile from G & M Builders, Inc. The odometer reading was 23,699 miles on the date of Hathcock's purchase, although the car in fact had traveled over 102,000 miles. While the car was owned by G & M Builders, the odometer broke and was replaced. Hathcock brought suit against Dan McKinney British Motors under Subchapter IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1991, and Dan McKinney British Motors in turn sued G & M Builders.[1]

The jury awarded Hathcock $8,500 in damages against Dan McKinney British Motors and found in favor of defendant G & M Builders. The district judge awarded Hathcock attorneys' fees in accordance with 15 U.S.C. § 1989 but refused to award attorneys' fees sought by G & M Builders. Dan McKinney British Motors appeals from the judgment favoring Hathcock,[2] and G & M Builders appeals from the district judge's denial of attorneys' fees. For reasons discussed below, we reverse the judgment in favor of Hathcock against Dan McKinney British Motors and affirm the district court's denial of attorneys' fees to G & M Builders.

Section 1988 of the Motor Vehicle Information and Cost Savings Act directs the transferor of an automobile to provide the transferee with a written statement disclosing the cumulative mileage registered on the odometer. In addition, the transferor must disclose that the actual mileage of the automobile is unknown if the transferor knows the odometer reading to be different from the number of miles the vehicle has actually traveled. Section 1989 imposes civil liability on any transferor who violates an odometer requirement with intent to defraud. In addition, section 1989 provides for treble damages or $1,500, whichever is greater, and allows the discretionary award of costs and attorneys' fees "in the case of any successful action to enforce the foregoing liability."

Turning to the facts of the case, we note that the trial below was a swearing match. George Jabour, as agent for G & M Builders, testified that he had the odometer replaced at 79,000 miles and that an appropriate notice was placed on the left door frame pursuant to 15 U.S.C. § 1987. According to Jabour, the sticker was still on the door when he transferred the car to Dan McKinney British Motors. He testified that he repeatedly advised Bobby Gray, used car manager for Dan McKinney British Motors, that the odometer reading was incorrect and that the actual mileage could be computed by adding the number of miles on the sticker to the number of miles on the odometer. He agreed to sign an odometer statement in blank because the sale was completed after dark, and he assumed that the salesmen would compute the actual mileage the following morning. Gray testified that Jabour did not mention the odometer replacement or the statutory notice. According to Gray, Jabour mentioned mileage only in emphasizing that the Mercedes in question was a low-mileage car. Gray did not notice any odometer replacement sticker, though he did not look for one.

Hathcock testified that before he bought the Mercedes he took it to a Mercedes mechanic, who coincidentally worked at the same place where Jabour had had the Mercedes serviced. The mechanic told Hathcock that he thought he recognized the car and that, if he remembered correctly, he had serviced it considerably beyond 23,699 miles. Hathcock returned to Dan McKin-

---

1. For simplicity, we mention only those causes of action that survived and are relevant to this appeal.

2. Although Dan McKinney British Motors purports to appeal from the entire judgment, it neither briefed nor argued any issues with respect to that portion of the judgment dismissing with prejudice its claim against G & M Builders. We therefore let stand that portion of the judgment.

ney British Motors, and repeated the mechanic's speculation to Gray and Royce Housley, general manager for Dan McKinney British Motors. Hathcock, Gray, and Housley all agree that Gray informed Hathcock at that time that Dan McKinney British Motors had a signed odometer statement from the prior owner indicating that the odometer showed the correct mileage. It is undisputed that the odometer statement signed by Jabour is in fact blank, and Gray explained that he had made a good-faith mistake. Housley testified he responded that, although to the best of his knowledge the mileage was correct, Hathcock would receive an odometer statement that the actual mileage of the car was unknown. According to Housley, he directed one of the salesmen to mark the "actual mileage unknown" box on the odometer statement and to accept Hathcock's lower counteroffer.

There was in evidence a written odometer statement on a standard form provided by the dealer. The name "Dan McKinney Datsun Volvo, Inc." had been preprinted on the line marked "transferor," the Mercedes in question was described accurately, the odometer reading was recorded as 23,699 miles, the box indicating "actual mileage unknown" was marked, the statement was signed by Dan McKinney and Roy Hathcock, and it was dated December 12, 1975. Hathcock testified that he did not receive the statement on the day of the transfer. According to Hathcock, he returned to the dealership two weeks later, on the advice of his attorney, and requested an odometer statement. Hathcock testified that the salesman, Greg Weaver, presented him a statement showing that the Mercedes had 23,699 miles on it and that he then signed the statement after carefully examining it. According to Hathcock, the box indicating that the actual mileage was unknown was blank when he signed the statement. When Weaver returned from photocopying the statement, however, the box was mark-

ed. Weaver testified that although he did not have an independent recollection of providing Hathcock with an odometer statement on the day of the transfer, it was routine procedure to do so, and the secretary would have noticed if he had departed from procedure. Weaver also testified that Hathcock returned two weeks later and requested a copy of the odometer statement. Weaver obtained Hathcock's file, photocopied the odometer statement, and gave Hathcock two copies. Weaver testified that to the best of his knowledge the "actual mileage unknown" block was not checked on the day of the transfer because he handled the paperwork, and he would have had no reason to check the box since he thought the odometer reading reflected the actual mileage.

Dan McKinney testified that he was president of both Dan McKinney Datsun Volvo, Inc. and Dan McKinney British Motors, Inc. He explained that Dan McKinney Datsun Volvo was incorrectly named as the transferor on the odometer statement because he had not yet received the printed forms for Dan McKinney British Motors, which had opened only recently.

On this record and over Dan McKinney British Motors' objection, the judge instructed the jury that as a matter of law no disclosure was made by Dan McKinney British Motors, Inc., either of the odometer reading or that the actual mileage was unknown. On appeal, Dan McKinney British Motors claims that the judge erred in so instructing the jury because fact questions existed both as to whether Dan McKinney British Motors had made a written disclosure through its agent Dan McKinney and whether it had made an oral disclosure through its agent Housley.[3]

Whether or not the challenged instruction took a question of fact from the jury regarding Housley's alleged oral disclosure,[4] we agree that it erroneously removed the issue regarding written disclosure. Our

---

3. Although the disclosure must be written in order to comply with the statute, evidence of an oral disclosure would certainly be relevant to the issue of "intent to defraud."

4. It is doubtful that Housley's statement could fairly be characterized as an oral disclosure. In its most favorable light, Housley's testimony establishes that during the same conversation

summary of the facts shows a plain and substantial conflict in the evidence as to whether Hathcock was provided with an accurate written odometer statement on the day of the transfer.[5] The judge's decision to give the challenged instruction was apparently based on the belief that as a matter of law a written odometer statement erroneously listing Dan McKinney Datsun Volvo as transferor could not be construed under section 1988 as sufficient disclosure from the actual transferor, Dan McKinney British Motors. Under that reading of the statute, the instruction was technically correct: the written odometer statement without question came from Dan McKinney Datsun Volvo rather than from Dan McKinney British Motors. However, we think such a construction too technical on these facts. The odometer statement in evidence is signed by Hathcock and by Dan McKinney, who is president of both Dan McKinney Datsun Volvo and Dan McKinney British Motors; it accurately describes the Mercedes in question; it indicates that the odometer reading on December 12, 1975, was 23,699 miles and further indicates that the actual mileage on the vehicle is unknown. Indulging all credibility choices and reasonable inferences in favor of Dan McKinney British Motors, this statement was given to Hathcock on December 12, 1975, and the box indicating "actual mileage unknown" was marked at that time. Surely such a statement satisfies the purpose of section 1988, which is to assure that transferors provide transferees accurate and timely mileage information. The judge therefore should have allowed the jury to decide as questions of fact whether Hathcock received that statement at the time of the transfer and whether the "actual mileage unknown" box was marked at that time. If so, Dan McKinney British Motors' duty under section 1988 was satisfied. Accordingly, the judgment in favor of Hathcock must be reversed and the case remanded for new trial.

 The appeal of G & M Builders is based on the district judge's refusal to assess attorneys' fees against Dan McKinney British Motors in favor of G & M Builders. G & M Builders argues that it should have been awarded attorneys' fees because it was a party in a successful suit to enforce liability under Subchapter IV of the Motor Vehicle Information and Cost Savings Act. It reasons that the literal language of the statute is broad enough to allow the award of its attorneys' fees because the language does not limit the award of fees to successful plaintiffs. We find this argument wholly without merit for three separate and independently sufficient reasons. First, and most compelling, we do not think that the statute was intended to authorize an award of attorneys' fees to a party in the position of G & M Builders. Dan McKinney British Motors was a plaintiff with respect to G & M Builders, and it would subvert the purpose of the Act to award attorneys' fees against an unsuccessful plaintiff. A different result should not obtain merely because of the posture of this lawsuit. Second, and equally important, the underlying judgment on which G & M Builders seeks to predicate fee liability against Dan McKinney British

---

in which Gray represented to Hathcock that Dan McKinney British Motors had a signed odometer statement indicating that the odometer reading reflected the correct mileage, Housley reaffirmed his own belief in the accuracy of the odometer reading but offered to provide Hathcock with an odometer statement indicating that the actual mileage was unknown if Hathcock felt that the odometer reading was incorrect. Housley then directed that Hathcock's lower counteroffer, allegedly based on Hathcock's doubts about the accuracy of the odometer reading, be accepted. Housley's testimony is obviously relevant to the issue of intent to defraud, but it is unlikely that any juror would interpret the challenged instruction as removing this testimony from his consideration.

5. Although Hathcock testified that he did not receive the odometer statement until two weeks later, it was dated the day of the transfer, and the salesman testified that it was routine procedure to supply each purchaser with an odometer statement at the time of transfer. And although Hathcock testified that the "actual mileage unknown" box was not marked when he signed the statement and although none of Dan McKinney British Motors' agents could recall marking the box, general manager Housley testified that he directed that the box be marked, and it is in fact marked.

Motors has been reversed in this opinion. And third, even had we decided that attorneys' fees were authorized by the statute in this situation, the award of fees is discretionary with the trial judge, and we could not say that he abused his discretion in refusing to exercise it in favor of G & M Builders. Accordingly, the district court's order refusing attorneys' fees to G & M Builders is affirmed.[6]

AFFIRMED in part and REVERSED and REMANDED in part.

---

**6.** McKinney raises two additional issues that we need not dispose of at this time. First, the following very prejudicial remark was made by the trial judge in response to the testimony of McKinney that he had lobbied for the passage of the Act: "It's just strange to me that somebody would go completely out of their way to ask the Congress of the United States to pass this kind of law and *then be up here violating the law.*" (emphasis added). We do not reach this matter because we assume it will not recur on retrial.

Second, objection was made to the excessiveness of treble damages. It is not necessary for us to reach this issue, since we are unable to anticipate what might occur at retrial.